IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHUNG MOORE,
#B12832,

        Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,
DR. SIDDIQUI,
REVA ENGELAGE,
GAIL WALLS,
ANGELA CRANE,
LT. QUALLS,
JOHN DOE #1,
JOHN DOE #2,
JOHN DOE #3,
JOHN DOE #4,
C/O WHITE,
C/O SCANLAN,
BOBBY HUGHES,
ALEX JONES, and
JACQUELINE LASHBROOK,

        Defendants.

Case No. 21-cv-01454-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Plaintiff Shung Moore, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was housed at Menard Correctional Center ("Menard"). This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### COMPLAINT

Moore alleges the following: On December 20, 2019, an officer came to his cell and told him to pack his property because he was being moved. (Doc. 1, p. 6). At the time, Moore was housed in general population, West Cell House, cell 1-10. Moore was taken to "the cage," a holding cell at the front of the gallery. While in the holding cell, Moore heard an officer tell the officer who had placed him in the holding cell, "Lt. Qualls said you're good, you can walk him on over." Before Moore was escorted from West Cell House, he requested to be given a bedroll. The officer escorting him told him, "they'll give you one over there." Moore was not allowed to take a bedroll with him. (*Id.*).

Moore was taken from general population and "placed in temporary confinement status in cell 246 of the institution's North 2 Disciplinary Segregation Unit." (Doc. 1, p. 22). Prior to his cell transfer, Moore did not break any prison rules and had not been charged with a violation.

Upon his arrival at segregation, Moore was stripped searched by Correctional Officer Roth in an empty shower stall that was extremely filthy. (Doc. 1, p. 23). There were discarded soiled underwear and socks in the corner and what appeared to be moldy food and phlegm on the walls and floor of the shower stall. Moore requested something to stand on while he was searched because he has a chronic skin condition that makes him susceptible to bacterial infections. His request was denied, and Roth directed Moore to stand on the dirty floor with bare feet while the strip search was conducted. (*Id.*).

Moore was then taken to cell 246 by an unknown officer, which was also dirty. (Doc. 1, p. 24). The cell walls were covered in dirt and grime and on certain areas "there were strands of hair stuck to the wall." The walls were stained with human bodily fluid and what appeared to be seaman. The toilet bowl was speckled with a blackish brown substance that smelled of feces. There were stains on the toilet seat and sides of the toilet bowl. There was discarded trash in the cell,

including empty milk cartons, used tissue, and Styrofoam containers with spoiled food. (*Id.*). The sink was also filthy, and the hot water button was broken. (*Id.* at p. 25). The cell did not have pillow, and the mattress was ripped and dirty.

Moore remained in cell 246 for "three days." (Doc. 1, p. 25, 26). During this time, he was not given hygiene items, a blanket, sheet, or pillow. (*Id.* at p. 25). When he asked staff members for these items he was told, "we can't find any," or "we don't have any." (*Id.*). On December 24, 2019, Moore was moved to cell 633, and he was not given his personal property until December 30, 2019. (*Id.* at p. 28, 29).

After his cell transfer, Moore submitted a request slip requesting emergency medical treatment. He was sent to nurse sick call and examined by Nurse Engelage, who diagnosed Moore with shingles. Engelage consulted with Dr. Siddiqui who instructed that Moore was to be quarantined and "deadlocked" in cell 633 for five days. (*Id.* at p. 29). Engelage gave Moore a prescription of Acyclovir to be taken four times a day for five days. Moore was sick from December 24 through December 29, 2019. (*Id.* at p. 30). He was in terrible pain and nauseous all day and night. Medical staff did not come and check on him during this time, and he was left to treat himself.

### DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** Fourteenth Amendment claim against Qualls, John Doe #1, John Doe #2, and Lashbrook for placing Moore in segregation without due process of law.

**Count 2:** Eighth Amendment claim against White, Scanlan, Hughes, Jones, and Lashbrook for housing Moore in unconstitutional conditions in cell 246.

**Count 3:** Eight Amendment claim against John Doe #3 and John Doe #4 for withholding Moore's personal property from December 20, 2019 through December 30, 2019.

    **Count 4:**  Eighth Amendment claim for deliberate indifference to a serious medical need against Engelage, Siddiqui, Wexford, Walls, and Crane.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly*[1] **pleading standard.**[2]

### Count 1

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown,* 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim, the Court undertakes a two-part analysis. *Id*. The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

Generally, prisoners "do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." *Smith v. Akpore,* 689 F. App'x 458, 460 (7th Cir. 2017). *See also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). A protected liberty interest is triggered only when the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn,* 933 F.3d 705, 721 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011). In order to determine if a sentence of segregation amounts to an atypical and significant hardship, the Court looks "to both the duration of the segregation and the conditions endured."

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).
[2] This includes any claims regarding Moore's strip search. These allegations are not asserted against any Defendant who listed in the case caption as a party. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

*Lisle,* 933 F.3d at 721 (citing *Marion v. Columbia Corr. Inst.*, 559 F. 3d 693, 697 (7th Cir. 2009)).

Here, Moore has not sufficiently pled that his time in segregation rose to the level of an "atypical and significant hardship" that would implicate a liberty interest requiring procedural due process. Moore alleges that he was wrongly placed in punitive segregation, where he endured filthy and unsanitary conditions for three days in cell 246, and once transferred from cell 246, he does not provide information on how long he remained in segregation or what conditions he experienced. Because brief amounts of time in segregation, even in dirty conditions, do not impose an atypical and significant hardship, Moore's three days in cell 246 do not impose an atypical and significant hardship that requires due process. *See Obriecht v. Raemisch*, 565 F. App'x 535, 540 (7th Cir. 2014) (finding that 78 days in alleged deplorable conditions was not a "atypical and significant hardship" as compared to prison life generally"); *Marion,* 559 F. 3d at 698 (noting that 6 months in segregation, without additional facts, did not trigger due process rights); *McCoy v. Atherton*, 818 F. App'x 538, 541-42 (7th Cir. 2020) (holding that 3 months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship). Accordingly, Count 1 is dismissed without prejudice.

**Count 2**

The deprivation of an inmate's basic human needs such as food, medical care, sanitation, or physical safety may violate the Eighth Amendment, and a prison official may be held liable for deliberate indifference to the risk of harm to the inmate from those conditions. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee Cnty*., 956 F.2d 696, 699 (7th Cir. 1992). To establish and Eighth Amendment claim, a plaintiff must allege "[e]xtreme deprivations" that are "objectively, sufficiently serious." *Boyd v. Davis,* 234 F. 3d 1272, at *2 (Table) (7th Cir. 2000) (quoting *Henderson v. Sheahan,* 196 F. 3d 839, 845 (7th Cir. 1999)). Furthermore, a defendant will only be found liable if he or she "knows

of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Boyce v. Moore,* 314 F. 3d 884, 888 (7th Cir. 2002) (quoting *Farmer*, 511 U.S. at 837)).

Moore alleges that for three days he was kept in a filthy cell without a sheet, hygiene items, pillow, or blanket. The cell was so cold that he was unable to sleep. These conditions, when taken collectively, are sufficient to rise to the level of cruel and unusual punishment. *See Gillis v. Litscher,* 468 F. 3d 488, 493 (7th Cir. 2006); *Johnson v. Lappin,* 264 F. App'x 520 (7th Cir. 2008).

However, Moore has failed to sufficiently plead that any of the Defendants were subjectively aware of the conditions in his cell and acted with deliberate indifference. He asserts liability against Defendants Hughes because he is "responsible" for operational activities in segregation and the officers who kept telling Moore that there were no bedrolls or hygiene packs available. (Doc. 1, p. 27). Hughes cannot be held liable solely based on the acts of his subordinates, and Moore has not alleged that Hughes's own conduct violated the Constitution or that Hughes had personal knowledge of the cell conditions. *Stockton v. Milwaukee Cty.,* 44 F. 4th 605, 619 (7th Cir. 2022) ("supervisory liability cannot attach under § 1983 absent a showing the officer is personally responsible for a deprivation of a constitutional right"). Count 2 is dismissed as to Hughes.

As for Jones and Lashbrook, Moore believes that they were aware of the condition of cell 246 based on reports or grievances filed by other inmates at Menard. (Doc. 1, p. 28). Again, these allegations are not sufficient to plead deliberate indifference. Moore must allege that Jones and Lashbrook have actual knowledge of and disregarded a risk to *his* health and safety. *See Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("The assumption...that anyone who knew or should have known of his...condition, and everyone higher up the bureaucratic chain, must be

liable...is a bad one). Therefore, Count 2 is dismissed as to Jones and Lashbrook.

Count 2 is also dismissed against White and Scanlan. Moore states that while he was housed in cell 246, he asked White and Scanlan for a bedroll or hygiene supplies, and they informed him they could not find any "every time." (Doc. 1, p. 26). These allegations are not enough to state a claim for deliberate indifference to a serious risk of harm. While White and Scanlan were aware Moore did not have toiletries for three days, Moore does not assert that White and Scanlan were aware of the full extent of the conditions in his cell that posed a substantial risk of serious harm. *See Lee v. Washington*, No. 97 C 4710, 1999 WL 759609, at *6 (N.D. Ill. Aug. 31, 1999) (denial of personal hygiene items such as soap, toothpaste and deodorant for two weeks does not rise to the level of a constitutional violation); *Martin v. Lane,* 766 F. Supp. 641, 648 (N.D. Ill. 1991) (deprivation of hygienic supplies and laundry services for between three and eighteen days did not constitute a violation of a prisoner's Eighth Amendment rights); *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988) (allegations that a prisoner was kept in a filthy, roach-infested cell without toilet paper for five days and without soap, toothpaste, or a toothbrush for ten days did not "reach unconstitutional proportions"). Thus, as pled, Moore has failed to state a claim for deliberate indifference against White and Scanlan, and Count 2 is dismissed as to them.

### Count 3

Moore claims that John Doe #3 and John Doe #4, who are property room officers, "would not give [him] his property from the segregation property room" until December 30, 2019. (Doc. 1, p. 30). As a result, he was without any personal hygiene items, other than toilet tissue, and other personal property for ten days. (*Id.*).

Even if John Doe #3 and John Doe #4 withheld Moore's personal property, which included hygiene items, for ten days, Moore does not assert that they were aware of or had any involvement in the conditions of his confinement while he was housed in segregation. Simply being deprived

of personal property for ten days does not amount to cruel and unusual punishment. Accordingly, Count 3 is dismissed.

### Count 4

The Eighth Amendment has been held to prohibit deliberate indifference to a prisoner's serious medical need. To state a claim for deliberate indifference to a serious medical need, an inmate must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

Moore alleges that after being treated for his shingles by Nurse Engelage and provided medication on December 24, 2019, he was quarantined in his cell and went without further treatment or observation. (Doc. 1, p. 30). For six days, he was in terrible pain, too weak to move, and unable to request help from prison officials. He asserts that he was denied treatment due to a policy implemented by Dr. Siddiqui that requires any inmate housed in segregation, who contracts an infectious disease such as shingles, to be quarantined and treated in his cell. The inmate is not admitted to the infirmary ward of the health care unit for treatment and observation.

Moore alleges that Wexford, who employs Dr. Siddiqui, was aware of this policy and has failed to implement provisions regarding the treatment of inmates confined in segregation diagnosed with infectious diseases.

Walls, as the health care unit administrator, was also aware that inmates confined in segregation who contracted infectious diseases, were required to be quarantined and treated in their cells and being denied treatment in the health care unit.

Moore further asserts that Crane, as the nursing supervisor, is responsible for instructing Engelage and other nurses to quarantine and treat segregation prisoners who contract an infectious disease in their cells and not in the health care unit. (Doc. 1, p. 33).

Moore has adequately pled that he suffered from a diagnosed serious medical need, shingles. He has failed, however, to assert that any Defendant knew that policy of treating inmates with infectious diseases at their cells, rather than in the health care unit, was harming inmates, including himself. There are no allegations that Defendants knew that he was in need of further medical attention and then deliberately refused to care for him. As such, Count 4 is dismissed without prejudice.

### LEAVE TO AMEND

As Counts 1, 2, 3, and 4 are dismissed, the Complaint does not survive preliminary review, and it shall be dismissed without prejudice for failure to state a claim for relief. If he would like to pursue his claims any further, Moore will have an opportunity to do so by filing a First Amended Complaint. A successful complaint generally alleges "the who, what, when, where, and how...." *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Therefore, Moore should clearly identify who violated his constitutional rights by naming them in the case caption and stating how each defendant caused or participated in a constitutional deprivation in the body of the First Amended Complaint.

### DISPOSITION

For the reasons stated above, the Complaint, including Counts 1, 2, 3, and 4, is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

Moore is **GRANTED** leave to file a "First Amended Complaint" on or before **December 8, 2022**. Should Moore fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to state a claim, failure to comply with a court order, and/or for failure to prosecute his claims. FED. R. CIV. P. 41(B); *Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

It is strongly recommended that Moore use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 22-cv-01454-SPM). To enable Moore to comply with this Order, the **CLERK** is **DIRECTED** to mail him a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. Moore must re-file any exhibits he wishes the Court to consider. The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Moore is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   November 10, 2022**

                                              *s/Stephen P. McGlynn*
                                              **STEPHEN P. MCGLYNN**
                                              **United States District Judge**