**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

SHUNG MOORE,
#B12832,

                **Plaintiff,**      |     Case No. 21-cv-01454-SPM

**v.**

WEXFORD HEALTH SOURCES, INC.,
DR. SIDDIQUI,
REVA ENGELAGE,
JACQUELINE LASHBROOK,
LT. QUALLS,
JOHN DOE #1,
JOHN DOE #2,
JOHN DOE #3,
JOHN DOE #4, and
C/O ROTH,

                **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

       Plaintiff Shung Moore, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was housed at Menard Correctional Center ("Menard"). This case is now before the Court for preliminary review of the First Amended Complaint under 28 U.S.C. § 1915A. Any portion of the First Amended Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### FIRST AMENDED COMPLAINT

       Plaintiff states that he has a reputation amongst prison staff at Menard for being a "complainer or whiner" from having filed many grievances and a lawsuit. (Doc. 15, p. 6). Several

Page 1 of 15

times in the months leading up to his placement in segregation, Lieutenant Qualls told Plaintiff that "Lt. Morris who you're suing is a friend of mine." Qualls would make remarks to Plaintiff calling him a troublemaker and the prison lawyer when Plaintiff would pass. (*Id.*).

On December 20, 2018, Correctional Officer Red came to Plaintiff's cell and told him to "pack it up" because he was moving. (Doc. 15, p. 14). Plaintiff was taken to the "cage," and while waiting to be moved, he heard Red say, "Lt. Qualls said you can walk him on over now." (*Id.*). Despite never breaking any prison rules and without any kind of hearing, Plaintiff was taken to segregation. (*Id.*).

Prior to placement in his segregation cell, Correctional Officer Roth conducted a visual body cavity search. (Doc. 15, p. 16). Plaintiff was forced to strip naked in a filthy shower stall that had discarded soiled underwear and dirty socks in the corner, moldy food, and dried clumps of yellowish-green phlegm on the walls and floor. Plaintiff asked Roth for something to stand on before taking off his shoes because of the unsanitary conditions. He told Roth that he suffers from methicillin resistant staphylococcus aureus. (*Id.* at p. 16-17). Roth responded, "this is normal intake process for seg and everybody gotta do it." Roth threatened Plaintiff with a disciplinary report if he did not comply.

On December 24, 2018, Plaintiff submitted a sick-call slip requesting emergency medical attention. (Doc. 15, p. 17). After ten minutes, when no one came, Plaintiff started screaming. (*Id.* at p. 18). A correctional officer came to his cell and asked him what was wrong. Plaintiff lifted his shirt and showed the officer severe inflammation that ran from his back to his stomach. He was then taken to the nursing station where he was examined by Nurse Engelage. Engelage diagnosed Plaintiff with shingles and told the officer to disinfect everything with which Plaintiff had contact. Engelage told Plaintiff he would have to be quarantined in the health care unit because his condition was contagious. Engelage went and made a phone call. (*Id.*). When she returned,

Page 2 of 15

Engelage told Plaintiff that Dr. Siddiqui ordered to have Plaintiff quarantined in his cell for five days and that Dr. Siddiqui had prescribed Acyclovir. (*Id.* at p. 19).

Later that day, Engelage came to his cell to give him the Acyclovir medication. At this time, Plaintiff told Engelage that he did not have any hygiene items or bedding. (Doc. 15, p. 21).

From December 24 through December 29, while "dead locked" in his cell, Plaintiff was in terrible pain, nauseous, and physically weak. (Doc. 15, p. 20). He did not have any hygiene items during this time and was unable to wash his hands with soap after using the toilet. On more than one occasion, he urinated on himself because it was too painful to stand up and use the toilet. Plaintiff was lethargic and in extreme mental anguish. (*Id.*). Plaintiff is diabetic, and he was not allowed to leave his cell to attend the diabetic insulin line to receive insulin. (*Id.* at p. 22).

Plaintiff was released from segregation on January 3, 2019. (Doc. 15, p. 22).

### DISCUSSION

Based on the allegations in the First Amended Complaint, the Court designates the following counts:

|  |  |
|---|---|
| **Count 1:** | Fourteenth Amendment due process claim against Qualls, John Doe #1, John Doe #2, and Lashbrook for wrongfully placing Plaintiff in segregation. |
| **Count 2:** | First Amendment claim against Qualls, John Doe #1, John Doe #2, and Lashbrook for placing Plaintiff in segregation in retaliation for filing a lawsuit and grievances. |
| **Count 3:** | Civil conspiracy claim against Qualls, John Doe #1, John Doe #2, and Lashbrook. |
| **Count 4:** | Illinois state law claim for false imprisonment against Qualls, John Doe #1, John Doe #2, and Lashbrook. |
| **Count 5:** | Eighth Amendment claim against Roth for deliberate indifference to excessive risk to health by having Plaintiff strip searched in unsanitary conditions. |
| **Count 6:** | Eighth Amendment claim against Siddiqui, Engelage, |

Wexford, and Lashbrook for failing to provide Plaintiff adequate medical treatment for his shingles.

**Count 7:**     Illinois state law claim for medical negligence against Siddiqui and Engelage.

**Count 8:**     Eighth Amendment claim against Siddiqui, Wexford, Lashbrook, and Engelage for deliberate indifference to Plaintiff's diabetes while he was quarantined.

**Count 9:**     Eighth Amendment claim against John Doe #3, John Doe #4, and Lashbrook for denying Plaintiff personal property, bedding, and hygiene items.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.[2]**

## Count 1

Plaintiff claims that he remained in segregation from December 20, 2018, through January 3, 2019, without any process. As discussed in the Court's previous merit review order, prisoners generally "do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." (Doc. 14, p. 4) (quoting *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017)). A protected liberty interest is triggered only when the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721. In order to determine if a sentence of segregation amounts to an atypical and significant hardship, the Court looks "to both the duration of the segregation and the conditions endured." *Lisle*, 933 F.3d at 721 (citing *Marion v. Columbia Corr. Inst.,* 559 F. 3d

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[2] This includes any claims for negligence under state law. At the beginning of the First Amended Complaint, Plaintiff states that he is alleging the tort of negligence. (Doc. 15, p. 6). Beyond this single statement, he does not provide any basic allegations in support of this claim, and he does associate negligence with any individual Defendant.

693, 697 (7th Cir. 2009)).

Again, Plaintiff has failed to plead that his time in segregation rose to the level of an "atypical and significant hardship" that would implicate a liberty interest requiring procedural due process. He was in segregation for two weeks and for some of that time he did not have hygiene items or bedding. This length of time in combination with the living conditions does not amount to the loss of a liberty interest. *See Obriecht v. Raemisch*, 565 F. App'x 535, 540 (7th Cir. 2014) (finding that 78 days in alleged deplorable conditions was not a "atypical and significant hardship" as compared to prison life generally"); *Marion*, 559 F. 3d at 698 (noting that 6 months in segregation, without additional facts, did not trigger due process rights); *McCoy v. Atherton*, 818 F. App'x 538, 541-42 (7th Cir. 2020) (holding that 3 months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship). Accordingly, Count 1 is dismissed.

## Count 2

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). To state a claim for retaliation, a plaintiff must plead that (1) he engaged in First Amendment activity; (2) he experienced an adverse action that would likely deter First Amendment activity in the future; and (2) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). It is not sufficient for a plaintiff's claims to "rest on mere labels, conclusions, or a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

The Court finds that Plaintiff has sufficiently articulated a claim for retaliation against Qualls. But Count 2 will be dismissed as to Lashbrook, John Doe #1, and John Doe #2. Plaintiff believes that Lashbrook, John Doe #1, and John Doe #2 participated in the retaliation based on their supervisory positions, and their failure to release him from segregation even though he had not violated any prison rules. (Doc. 15, p. 31-32). Other than speculation, Plaintiff has not pled any facts supporting his belief that these Defendants were motivated by his First Amendment protected activity. *See Dorsey v. Williams,* No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022) (the plaintiff must "plausibly allege that his protected activity was a motivating factor behind the defendants' conduct); *Hanks v. Hubbard,* No. 21-2504, 2022 WL 356732, at *3 (7th Cir. Feb. 7, 2022). Additionally, Defendants cannot be held liable for the conduct of their subordinates, as there is no vicarious or *respondeat superior* liability in Section 1983 actions. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Accordingly, Count 2 will proceed against Qualls and is dismissed without prejudice as to Lashbrook, John Doe #1, and John Doe #2.

### Count 3

Plaintiff has also failed to state a claim for civil conspiracy. Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). In order to state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015).

Plaintiff states in the First Amended Complaint that he "does not know whether or not" Qualls, John Doe #1, John Doe #2, and Lashbrook agreed on a course of conduct to violate his

Page 6 of 15

right, but "based on information and belief," he alleges that they participated in a civil conspiracy to retaliate against him. (Doc. 15, p. 16). This conclusory assertion does not state a plausible claim that any of the Defendants agreed to a scheme to deprive him of his rights, and allegations of parallel conduct do not suffice. *See Twombly*, 550 U.S. at 556-557 (2007). The Court further notes that Plaintiff has not stated a claim that Lashbrook, John Doe #1, and John Doe #2 retaliated against him and without an underlying constitutional claim, there can be no civil rights claim for conspiracy. *See Smith v. Gomez* 550 F.3d 613, 617 (7th Cir. 2008) ("conspiracy is not an independent basis of liability in § 1983 actions"). For these reasons, Count 3 is dismissed without prejudice.

### Count 4

Plaintiff states that the actions of Qualls, John Doe #1, John Doe #2, and Lashbrook constituted the tort of false imprisonment under the law of Illinois. Conclusory statements, such as this, are insufficient to state a claim. *See Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013). Furthermore, the Seventh Circuit has determined that "prison officials have discretion to place inmates in administrative segregation…Because [Plaintiff] was lawfully convicted and sentenced, there is no basis on which he can maintain a false imprisonment claim." *Goings v. Jones,* No. 16-cv-00833-NJR-DWG, 2018 WL 2099877, at *5 (S.D. Ill. May 7, 2018). Count 4 is dismissed.

### Count 5

Plaintiff claims that Roth acted with deliberate indifference to a serious risk to his health by having him strip search in unsanitary conditions. (Doc. 15, p. 24). Because of Roth's actions, he suffered emotional pain.

Prison officials violate an inmate's constitutional rights when they display deliberate indifference to a substantial risk of serious harm. *See Farmer v. Brennan,* 511 U.S. 825, 828-829

(1994). However, temporary exposure to unsanitary conditions generally is not sufficient to state an Eighth Amendment claim. *See Harris v. Jones,* No. 20-1625, 2021 WL 4950248 (7th Cir. Oct. 25, 2021) (finding no constitutional violation where a plaintiff had to wait a day for soap and clean underclothes and three days for a clean jumpsuit and shower after urinating on himself); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (allegations that a prisoner was kept in a filthy, roach-infested cell without toilet paper for five days and without soap, toothpaste, or a toothbrush for ten days did not "reach unconstitutional proportions"). *See also Richmond v. Dart,* No. 12 C 0954, 2012 WL 567245, at *2 (N.D. Ill. Feb. 17, 2012) ("[o]ne isolated mistake does not allow a plausible inference of deliberate indifference").

Here, Plaintiff was forced by Roth to strip down and stand barefoot in a filthy shower for a very short period of time on a single occasion. This event does not rise to the level of a constitutional deprivation. Count 5 is dismissed without prejudice.

### Count 6

Plaintiff asserts that Dr. Siddiqui, Nurse Engelage, Lashbrook, and Wexford treated him contrary to accepted professional standards by making him stay in a medically unsanitary environment while he was suffering from a painful infections disease with no one to assist him. He states that he should have been treated in the health care unit and that each Defendant knew of the poor conditions of his cell. (Doc. 15, p. 24). Engelage was aware of his cell conditions because she is the segregation sick call nurse, and she came to his cell on December 24, 2018, to give him Acyclovir. (*Id.* at p. 24). At the time, he informed her he did not have any hygiene items or bedding. Dr. Siddiqui was aware of the cell conditions because he conducts rounds in segregation at least once a week. (*Id.*). Lashbrook knew he was being quarantined in segregation and not the health care unit because IDOC directives mandate that she be notified about incidents of communicable disease. Finally, Wexford knew that inmates were being quarantined in segregation cells from

Page 8 of 15

Siddiqui, who is an employee of Wexford. (*Id.* at p. 22).

Plaintiff further claims that Siddiqui and Engelage did not provide him with any instructional materials on shingles treatment, prevention, and self-care. (*Id.* at p. 19). They failed to put in place any kind of workable methods or procedures to ensure that Plaintiff could summon staff for help in the event of an emergency caused "by his physically and mentally weakened state," and they did not implement procedures by which they could observe and assess his condition. (*Id.* at p. 19).

Again, Plaintiff has failed to plead a claim for deliberate indifference. The decision not to treat Plaintiff in the health care unit and to have him quarantine in his cell where conditions are worse does not in and of itself constitute deliberate indifference. Deliberate indifference exists only where an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837-838. Other than informing Engelage on his first day in cell 633 that he had not been provided bedding and hygiene items, Plaintiff does not assert that he ever notified any of the Defendants that he needed additional medical care for a "common infection" that has "no cure...[and] simply has to run its course." *See Shingles,* JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/conditions-and-diseases/shingles (last visited Apr. 5, 2023). Moreover, it is not enough to plead that Defendants "should have known of a risk" to his health. *Pierson v. Hartley*, 391 F. 3d 898, 902 (7th Cir. 2005). While Plaintiff preferred to be in the health care unit, which is cleaner and where he can easily communicate with medical staff, and to have been provided literature on his condition, the Eighth Amendment does not entitle him to demand specific care or the best possible care. *Haley v. Feinerman*, 168 F. App'x 113, 117 (7th Cir. 2006) (citing *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997)). *See also Tuduj v. Lawrence,* 829 F. App'x 120, 124 (7th Cir.

2020). Accordingly, Count 6 is dismissed without prejudice as to Dr. Siddiqui, Nurse Engelage, and Lashbrook.

As a private corporation, Wexford can only be held liable under Section 1983 if it had an unconstitutional policy or practice which caused the alleged Constitutional deprivation. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff asserts that Wexford had knowledge that their "absence of policies or policy or practices were harming a class of prisoners – prisoners who require treatment of infectious diseases while in seg." (Doc. 15, p. 25). He further states that Dr. Siddiqui was following Wexford's policy when he ordered Plaintiff to be confined in segregation instead of transferring him to the health care unit's infirmary for care. (*Id.*). Because Plaintiff has failed to plead a constitutional violation regarding the decision to treat him in his cell rather than the health care unit, "there is nothing to hold [Wexford] responsible for." *Brian Story v. Dart,* No. 19-cv-2426, 2023 WL 2612622, at *6 (7th Cir. Mar. 23, 2023). Count 6 is dismissed without prejudice as to Wexford.

## Count 7

Plaintiff asserts that Siddiqui and Engelage owed him a duty to provide him with reasonable care and did not. (Doc. 15, p. 24-25). They breached that duty by failing to administer his "medication timely spaced apart as prescribed, performed no follow-ups on his condition, never tested him after seeing him for diagnosis, and neglected him altogether." (*Id.* at p. 25).

Because Plaintiff has not stated an Eighth Amendment claim for deliberate indifference regarding the lack of care he received for his shingles, the Court will not exercise supplemental jurisdiction over the companion state law claim for medical negligence. Count 7 is dismissed without prejudice.

## Count 8

Plaintiff also alleges that Siddiqui, Wexford, Lashbrook, and Engelage were responsible

for a "policy or practice or negligence" which did not allow him to be tested to determine if the shingles was still active "and/or allowed him to leave his cell" so that he could attend the diabetic line to receive his insulin. (Doc. 15, p. 22). He claims that Siddiqui and Engelage knew he was diabetic from his medical records and from treating him for those conditions in the past. (*Id.* at p. 19).

Construing Plaintiff's complaint broadly, the Court finds that Plaintiff has stated an Eighth Amendment claim against Siddiqui and Engelage for deliberate indifference to his diabetes while he was quarantined. Plaintiff claims that these Defendants knew he was diabetic from his medical records and previous treatment they provided him for diabetes, but they did not make the necessary arrangements for him to receive insulin while quarantined in his cell. (Doc. 15, p. 19). As a result, he was not given insulin while he was quarantined. Count 8 will proceed against Siddiqui and Engelage.

Count 8 will be dismissed as to Wexford. Plaintiff states that he did not receive insulin while quarantined because of a policy, a practice, or negligence that either kept him from being tested "and/or" prohibited from leaving his cell. This single vague assertion is not sufficient to state a plausible claim against Wexford for an unconstitutional policy or practice. There are no factual allegations in the First Amended Complaint supporting the conclusion that Wexford maintained a policy or practice that caused Plaintiff to be denied insulin. *See McCauley v. City of Chi.,* 671 F. 3d 611, 616 (7th Cir. 2001).

Count 8 is also dismissed as to Lashbrook. As discussed in Count 2, she cannot be held liable merely because she is the warden and was in a supervisory position. Plaintiff has not provided any factual allegations regarding her personal involvement in or knowledge of inadequate care for his diabetes while he was quarantined.

**Count 9**

Plaintiff claims that John Doe #3 and John Doe #4 were the segregation property officers from December 20 through December 30, 2018. (Doc. 15, p. 22). They were responsible for ensuring that all prisoners in segregation receive their personal property within the time set by prison regulation. (Doc. 15, p. 22-23). After he transferred to segregation, he states that he did not have "scribe's material" to contact John Doe #3 and John Doe #4 about his property. Plaintiff has been housed in segregation on many occasions and each time he has to wait about two weeks or longer for his "allowable personal property to be given to him." (*Id.* at p. 23). John Doe #3 and John Doe #4 report directly to Lashbrook, who is ultimately responsible for the segregation unit. Lashbrook would make daily rounds in segregation, but when inmates, including Plaintiff, would call her name to talk to her, she would ignore them and walk away. (*Id.* at p. 23). Plaintiff claims that John Doe #3, John Doe #4, and Lashbrook failed to provide him with "the minimum civilized measure of life's necessities, such as hygiene items and bedding" in violation of the Eighth Amendment. (*Id.* at p. 25).

Count 9 is dismissed. As stated above, an official must know of and disregard an excessive risk to inmate health or safety to be held liable under the Eighth Amendment. *Farmer,* 511 U.S. at 837. Plaintiff does not assert that he informed or communicated in anyway with John Doe #3 and John Doe #4 that he was ill and did not have hygiene items or bedding. In fact, he admits that he did not send them a written request or message about his conditions because he did not have writing supplies. Although Plaintiff asserts that it is a common practice that an inmate must wait for property when an inmate is transferred to segregation, this is not sufficient to state a claim against the property officers for the conditions he experiences from December 20 through December 30, 2018. As the Supreme Court has stated, "an official's failure to alleviate a significant risk that he should have perceived but did not...cannot under our cases be condemned as the infliction of

punishment." *Id.* at 838. *See also Burks v. Raemisch,* 555 F. 3d 592, 593 (7th Cir. 2009) ([l]iability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise"). Because Plaintiff has failed to plead that John Doe #3 and John Doe #4 were aware that he did not receive hygiene items and bedding, he has failed to state a claim against them for unconstitutional conditions of confinement.

Furthermore, Lashbrook cannot be held liable simply because she is responsible for the segregation unit. Plaintiff does not assert that she had actual knowledge that he was without hygiene items and bedding and at substantial risk of serious harm. For these reasons, Count 9 is dismissed.

**DISPOSITION**

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 2** shall proceed against Qualls but is **DISMISSED without prejudice** as to John Doe #1, John Doe #2, and Lashbrook. **COUNT 8** shall proceed against Siddiqui and Engelage but is **DISMISSED without prejudice** as to Wexford and Lashbrook. **COUNTS 1, 3, 4, 5, 6, 7,** and **9** are **DISMISSED without prejudice.** Because there are no surviving claims against Defendants John Does #1-4, Wexford, Roth, and Lashbrook, they are **DISMISSED without prejudice**, and the Clerk shall **TERMINATE** them as parties to this case.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Qualls, Siddiqui, and Engelage the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the First Amended Complaint, the Motion to Amend (Doc. 9), and this Memorandum and Order to Defendants' place

Page 13 of 15

of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 10, 2023**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.