IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHUNG MOORE, #B12832, | |
| Plaintiff, | Case No. 21-cv-01454-SPM |
| v. | |
| WILLIAM QUALLS, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Shung Moore, an inmate within the Illinois Department of Corrections, initiated this action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. He is currently proceeding on a First Amendment claim against Defendant William Qualls for placing him in segregation on December 20, 2018, in retaliation for filing a lawsuit and grievances. (Doc. 38, 39). This matter is before the Court on a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant William Qualls. (Doc. 35).[1] For the following reasons, the motion is denied.

### LEGAL STANDARDS

### I.   *Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The motion for summary judgment was filed by two defendants, Qualls and Engelage. After the motion was filed, the Court conducted a merit review of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. §1915A and dismissed all claims against Engelage. (Doc. 38). Engelage was terminated as a party to this case. Therefore, as to the claims that Plaintiff failed to exhaust his administrative remedies against Engelage, the motion for summary judgment was denied in part as moot. The motion remains pending regarding the exhaustion arguments put forth by Qualls. (*Id.*).

*See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); Roberts v. Neal, 745 F. 3d 232, 236 (7th Cir. 2014). Where there is no disputed issue of fact, a hearing is not necessary.

**II.     Exhaustion of Administrative Remedies**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in

the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

### III. Grievance Procedure

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedures laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct an inmate is to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit his findings to the Chief

Administrative Officer ("CAO") within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board ("ARB"). *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO. *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023–24.

## ANALYSIS

Based on the parties' briefing, the relevant grievances at issue are Grievances #338-2-19, #432-2-19/8-19-082/8-19-120,[2] and #339-2-19. As to Grievances #338-2-19 and #432-2-19/8-19-082/8-19-120, the main argument between the parties is whether these grievances were timely filed and properly reviewed at each level in accordance with grievance procedure. Regardless of whether the grievances are procedurally defective, however, these two grievances cannot serve to exhaust Plaintiff's First Amendment claim against Qualls. Nothing in the grievances alerted prison officials to the allegations alleged in this case. (*See* Doc. 35, p. 11-12). In Grievance #338-2-19, Plaintiff complains about the segregation intake procedures and his living conditions while in North II cell house on disciplinary segregation in December 2018. (Doc. 35-2, p. 4). In Grievance #432-2-19/8-19-082-8/19/120, Plaintiff states that while in North II disciplinary segregation he contracted shingles, and he grieves the inadequate medical care he received. (*Id.* at p. 11). The grievances do not mention or describe Qualls; nor do they contain any allegations that Plaintiff

---

[2] This grievance appears to be associated with three different grievance numbers. The grievance, dated February 21, 2019, was filed by Plaintiff at Menard Correctional Center and given the number 432-2-19. According to Plaintiff, after he transferred to Lawrence Correctional Center and the grievance was returned to him without a counselor's response, he resubmitted the grievance. (Doc. 37-1, p. 3). The grievance was then given the number 8-19-082 by staff at Lawrence Correctional Center. (Doc. 37-1, p. 4; Doc. 35-2, p. 10). When the grievance was eventually reviewed by the ARB, it seems that the ARB misidentified the grievance as 8-19-120. (*See* Doc. 35-2, p. 9; Doc. 37-1, p. 5).

was placed in segregation unjustly or in retaliation for exercising his First Amendment rights. Consequently, Grievances #338-2-19 and #432-2-19/8-19-082/8-19-120 do not cover Plaintiff's claims against Qualls.

That leaves us with Grievance #339-2-19. Defendant Qualls argues that Grievance #339-2-19 and #338-2-19 are the same grievance and was simply mislabeled in Plaintiff's Cumulative Counseling Summary ("CHAMPS"). (Doc. 35, p. 10 n. 2). Defendant states that the ARB properly dismissed the Grievance #338-2-19/#339-2-19 as untimely filed outside the 60-day deadline. (*Id.* at p. 10) (citing 20 ILL. ADMIN. CODE § 504.810(a)). CHAMPS records that the grievance office received the grievance on February 20, 2019, 63 days after December 20, 2018, when Plaintiff was allegedly retaliated against by Defendant Qualls. (*Id.* at p. 10). On the grievance itself, the Counselor records receiving the grievance on February 25, 2019, 68 days after the date of the incident. (Doc. 35-2, p. 4). Because the grievance was denied by the ARB as not submitted in the proper time frame, Defendant asserts that the grievance cannot serve to exhaust Plaintiff's claims in this case.

Plaintiff argues that Grievances #338-2-19 and #339-2-19 are two separate grievances. He states that on February 17, 2019, he filed Grievance #339-2-19, by depositing the grievance in the designated repository. (Doc. 37-1, p. 5). In Grievance #339-2-19, he complained about being wrongfully placed in punitive segregation at Menard Correctional Center without just cause, and he requested for Defendant Qualls to be investigated for his unlawful confinement in segregation. Plaintiff alleges that he received the Counselor's response to the grievance on February 26, 2019, and unsatisfied with the response, he resubmitted the grievance to the Grievance Officer for the second level review by again depositing his grievance in the designated repository. Plaintiff asserts that he did not receive a response from the Grievance officer or an acknowledgement of receipt. (*Id.*). He then engaged in efforts to track down Grievance #339-2-19. (*Id.* at p. 5-6).

On March 31, 2019, he sent a request to the Grievance Officer inquiring about the status of Grievance #339-2-19. (Doc. 37-1, p. 5). In March, April, September, and December 2019 and June 2020, he sent requests to the records office asking for copies of the grievance. (*Id.* at p. 6-7). Whenever he would receive a copy, Plaintiff states he would resubmit the grievance in an attempt to follow administrative procedure. Each time, the grievance would again disappear. (*Id.*).

On April 28, 2019, Plaintiff filed Grievance #523-4-19 complaining about not being able to obtain a copy of Grievance #339-2-19 from the records office. (Doc. 37-1, p. 6). On September 1, 2019, he submitted a letter to a Grievance Officer at Lawrence Correctional Center, along with a copy of Grievance #339-2-19. (*Id.*). He filed two more grievances in March and May 2020 claiming that staff were obstructing his ability to adhere to the grievance procedures concerning Grievance #339-2-19. (*Id.* at p. 7). Plaintiff states that Grievance #339-2-19 has disappeared, and therefore, he has been prevented from exhausting his administrative remedies. (*Id.* at p. 7-8).

The Court finds that disputed issues of fact remain regarding whether the grievance process was available to Plaintiff in his attempts to fully exhaust Grievance #339-2-19 and whether this grievance was timely filed. Defendant does not point to any evidence in the record to support their belief that Grievance #339-2-19 is a mislabeling of Grievance #338-2-18 in CHAMPS. The record supports Plaintiff's argument that they are two separate grievances, and that Grievance #339-2-19 grieves his retaliatory placement in segregation by Defendant Qualls. In CHAMPS, the receipt of Grievance #338-2-19 and Grievance #339-2-19 by the grievance office on February 20, 2019, are recorded separately, and each entry has different descriptions. (Doc. 35-3, p. 4). Grievance #339-2-19 is described as "regarding unlawful seg confinement." (*Id.*). The Counselors' responses to each grievance are also recorded in separate entries in CHAMPS, and again, each entry has different descriptions, clearly responding to the distinct issues presented in each grievance. (*Id.* at p. 3). The description of Grievance #339-2-19 in this entry states, "Offender grieves being on

temporary confinement. In response: Per offender's record he was in temporary confinement from 12/20/18 to 1/3/19." (*Id.* at p. 3). While the response to Grievance #338-2-19 states, "Offender grieves conditions of confinement and staff conduct. In response: Unable to substantiate any of offender's allegations." (*Id.*). CHAMPS records Grievance #338-2-19 as receiving second level review, but the only other entries in CHAMPS referencing Grievance #339-2-19 pertain to Plaintiff's requests for copies. In response to his requests for copies, CHAMPS records Plaintiff receiving copies of Grievance #339-2-19. Thus, there is evidence supporting Plaintiff's arguments that Grievance #339-2-19 was a separate grievance.

Furthermore, Plaintiff has presented evidence creating a disputed issue of fact regarding whether he was thwarted from fully exhausting Grievance #339-2-19. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"); *Dole,* 438 F.3d at 809 (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedure). As mentioned, in CHAMPS, it is recorded that Plaintiff requested and was given copies of Grievance #339-2-19. Yet, neither party has included this grievance in the record. Plaintiff contends that every time he would receive a copy of the grievance, he would resubmit it for consideration, and the grievance would always go missing. The fact that the grievance was properly submitted at the initial stage of the grievance process and copies were later requested and later produced to Plaintiff (*see* Doc. 35-3, p. 1-2), supports he claim that he did not receive responses after resubmitting Grievance #339-2-19 for second level review.

There are also questions of fact regarding whether Plaintiff timely submitted Grievance #339-2-19. Although Defendant Qualls does not directly address the timeliness of Grievance #339-

Page 7 of 9

2-19, he appears to take the position that a grievance should be deemed filed when the grievance is recorded as received by the grievance office. (*See* Doc. 35, p. 10). Plaintiff argues that he timely filed the grievance by placing it in the designated repository before the 60-day deadline. (Doc. 37-1, p. 5). The record remains unclear on when a grievance is considered "filed with the counselor or Grievance Officer" as stated in the grievance procedures. *See* 20 ILL. ADMIN. CODE § 504.810(a). The ARB determined that Grievance #338-2-19 was untimely filed because the Counselor noted on the grievance form that it was *received* February 25, 2019, but then determined that Grievance #8-19-120 was not timely filed because the Counselor *signed* the grievance on August 29, 2019, disregarding the receipt date of August 6, 2019. (Doc. 35-2, p. 1, 9, 11). Other than the grievances themselves, there is no evidence speaking to this issue.

Based on the record, the Court cannot say as a matter of law that Defendant Qualls has met his burden of demonstrating that Plaintiff had available remedies that he did not properly utilize in an attempt to exhaust his claims in Count 1. A hearing is required to resolve this disputed issue of fact. *See Pavey*, 544 F. 3d 739.

If Defendant Qualls would like to pursue this affirmative defense for failure to exhaust administrative remedies any further at this point, they must request a *Pavey* hearing within fourteen days. If a hearing is requested, the issues the Court would consider are limited to whether Plaintiff timely properly filed Grievance #339-2-19 and whether the grievance went unanswered rendering the grievance process unavailable to him. The parties will be expected to present evidence only on these issues, if a *Pavey* hearing is held. If Defendant does not request a *Pavey* hearing, the Court will enter a new scheduling and discovery order lifting the stay on merits discovery, or the parties may request that the case be referred for a settlement conference or mediation.

## DISPOSITION

For the reasons stated above, the motion for summary judgment on the issue of exhaustion

of administrative remedies for Plaintiff's retaliation claim (Count 1) filed by Defendant Qualls is **DENIED.** (Doc. 35). Defendant must file a notice within fourteen (14) days of this Order either withdrawing the affirmative defense of exhaustion or requesting a *Pavey* hearing. **Failure to file a notice by this deadline and in compliance with this Order will result in a waiver of this affirmative defense.**

    **IT IS SO ORDERED.**

    **DATED:   August 6, 2024**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**