**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **SHUNG MOORE,**<br>**#B12832**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WILLIAM QUALLS, et al.,**<br><br>**Defendants.** | **Case No. 21-CV-01454-SPM** |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendant Lt. William Qualls. (Doc. 67). *Pro se* Plaintiff Shung Moore filed a Response. (Doc. 73). Having been fully informed of the issues presented, this Court **GRANTS in part and DENIES in part** Qualls' Motion for Summary Judgment.

### PROCEDURAL BACKGROUND

*Pro se* Plaintiff Shung Moore is an inmate who was incarcerated at Menard Correctional Center in Menard, Illinois during the events that lead to this suit. (*See* Doc. 39). The instant suit arises from Moore being placed in putative segregation on December 20, 2018, allegedly at the direction of Lt. William Qualls and in retaliation for Moore's lawsuit against Lt. Morris, allegedly a friend of Qualls. (*See id.*). While in putative segregation, Moore suffered a shingles outbreak and allegedly received poor medical treatment. (*See id.*). Moore alleges that Qualls' decision to transfer Moore to segregation was unconstitutional under the First Amendment. (*See id.*).

Moore originally brought suit on November 18, 2021, and filed the operative Complaint against Qualls, Dr. Mohammed Siddiqui, Nurse Reva Engelage, and Wexford Health Sources, Inc. ("Wexford") on December 21, 2023. (Docs. 32, 39). On April 25, 2024, the Court conducted a preliminary review of Moore's operative Complaint and consolidated Moore's claims into four counts: (1) a First Amendment claim against Qualls for placing Moore in segregation on December 20, 2018, in retaliation for filing a lawsuit and grievances; (2) an Eighth Amendment claim against Siddiqui, Engelage, and Wexford for deliberate indifference to Moore's diabetes while he was quarantined; (3) an Eighth Amendment claim against Siddiqui, Engelage, and Wexford for failing to provide Moore adequate medical care for his shingles; and (4) an Illinois state law claim for medical negligence against Siddiqui and Engelage. (Doc. 38). The Court dismissed Moore's two Eighth Amendment claims because Moore did not plead facts that would demonstrate or allow the inference that Defendants disregarded a substantial risk of harm to Moore or acted in a criminal or reckless manner. (Doc. 38). Because the Court dismissed the shingles Eighth Amendment claim, the Court declined to exercise supplemental jurisdiction over the related state law medical negligence claim. (Doc. 38).

Lt. Qualls filed the instant Motion for Summary Judgment on September 8, 2025. (*See* Doc. 67). Moore responded on December 30, 2025. (*See* Doc. 73).

## FACTUAL BACKGROUND

The following facts are described in the light most favorable to Moore. *See Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) ("On summary judgment[, courts] must take the facts in the light most favorable to the non-moving party").

Moore filed "a lot" of grievances while he was incarcerated at Menard Correctional center. (Doc. 67-7, p. 17). He had a reputation as a complainer or whiner and as a troublemaker, and at one point, Qualls called Moore a troublemaker or a jailhouse lawyer. (*Id.*, pp. 17–19). When Qualls became aware[1] that Moore was suing Qualls' friend, Lt. Morris,[2] "that's when the retaliation began to pick up." (*Id.*, pp. 20, 33–34).

Qualls was a lieutenant of the West Cell House, and he had the authority to move inmates. (*Id.*, pp. 26, 42– 45). While Moore was living in the West Cell House, he was transferred to segregation without being issued a disciplinary ticket. (*Id.*, pp. 27, 41). When the transfer happened, Moore heard an officer tell the officer who escorted Moore to segregation that, "Lieutenant Qualls said you can walk him over." (*Id.*, p. 40). The officer escorting Moore told Moore that "This is bullshit." (*Id.*, p. 38). Moving Moore to segregation was a disciplinary action, but Moore never received a disciplinary ticket or saw the adjustment committee. (*Id.*, pp. 41–42). Moore was in segregation from December 20, 2018, until January 3, 2019. (*Id.*, pp. 26–27).[3]

---

[1] Qualls told Moore that he knew Moore was suing Morris. (*Id.*, p. 35).

[2] Moore knew that Qualls and Morris were friends because he had seen them together, and they would interact like buddies. (*Id.*, pp. 33–34).

[3] The prison records show that Moore was in segregation until January 8, 2019. (Doc. 67-1, p. 1). This record indicates that it was last modified May 31, 2019. (*Id.*).

On December 24, while in segregation, Moore was diagnosed with shingles and treated with Acyclovir (*Id.*, pp. 46–48; Doc. 67-5, p. 5). A nurse told Moore that his shingles outbreak may have been caused by stress because Moore was in segregation and afraid that he would not be able to talk to his family on Christmas. (Doc. 67-7, pp. 48–49). Although when general population inmates are diagnosed with shingles, they are quarantined in the healthcare unit, Moore was quarantined in his segregation cell. (*Id.*, p. 47). Moore's segregation cell was unsanitary, and while in segregation, he was throwing up, cold, and sleeping on the floor. (*Id.*, pp. 62, 65–66).

As a result of this incident, Moore filed grievance 339-2-19 on February 17, 2019, and after several more exchanges regarding issues with completing exhaustion, he received a final response on May 13, 2020, to a grievance about his issues exhausting grievance 339-2-19 saying that his grievance could not be processed. (Docs. 44, 53–54). Moore filed the instant suit on November 18, 2021. (Doc. 1).

## APPLICABLE LAW AND LEGAL STANDARDS

The court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). After the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party, who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than

"[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nonetheless, the non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

### I. First Amendment Retaliation.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter his free speech; and (3) his protected speech was at least a motivating factor for the deprivation." *Id.* (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir.

2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 587 U.S. at 398 (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). More "[s]pecfically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (citing *Hartman*, 547 U.S. at 260). "[A] plaintiff may rely on both direct and circumstantial evidence." *Lavite*, 932 F.3d at 1031 (citing *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643-44 (7th Cir. 2013); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965-66 (7th Cir. 2012)).

In his Motion for Summary Judgment, Qualls challenges only whether Moore suffered a deprivation likely to deter his free speech and whether his protected speech was at least a motivating factor for the deprivation. (Doc. 67, p. 7).

First, Moore suffered a deprivation likely to deter free speech. In this assessment, courts "apply an objective test: whether the alleged conduct by the defendant[] would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, [courts] can resolve the issue as a matter of law." *Id.* at 647. "The harsh realities of a prison environment affect [a court's] consideration of what actions are sufficiently adverse. 'Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens,

before an action taken against them is considered adverse.'" *Holleman v. Zatecky*, 951 F.3d 873, 880–81 (7th Cir. 2020) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). "If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under § 1983." *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (prisoner transferred to more-restrictive cell block survived summary judgment).

Here, Moore was placed in segregation for thirteen days. (Doc. 67-7, p. 30). During that time, he was diagnosed with shingles but left in segregation instead of being quarantined in the healthcare unit. (*Id.*, p. 47). His segregation cell was unsanitary, and while in segregation, he was throwing up, cold, and sleeping on the floor. (*Id.*, pp. 62, 65–66). This is sufficient to support a claim for retaliation. *See Whitfield v. Spiller*, 76 F.4th 698, 707-08, 715 (7th Cir. 2023) (retaliation claim survived summary judgment where defendant responsible for plaintiff being incarcerated in segregation for six extra days). That Moore continued to file lawsuits and grievances is irrelevant because the standard is an objective one. *See Douglas*, 964 F.3d at 646 (because standard is objective, irrelevant whether plaintiff continued First Amendment activity).

Second, Moore's protected speech was at least a motivating factor for the deprivation. Qualls transferred Moore from general population to segregation for thirteen days because he sued Lt. Morris.[4] (Doc. 67-7, pp. 20, 33–34, 40–42). Qualls

[4] Contrary to Qualls' argument, there is no evidence, let alone no contradicted evidence, that Moore was transferred to solitary confinement because he displayed shingles symptoms because there is no evidence that any prison official was aware that Moore had shingles symptoms until days after he was transferred. (Doc. 67, p. 7; Doc. 67-7, p. 47).

argues that he did not have the authority to move Moore to segregation pursuant to IDOC policy. (Doc. 67, p. 8). But where IDOC policy contradicts Moore's deposition, it creates a factual issue that cannot be resolved on summary judgment. *See Bennington,* 275 F.3d at 658.

## II. Statute of Limitations.

Because § 1983 does not have its own statute of limitations, this Court borrows Illinois' two-year statute of limitations for personal injury claims to § 1983 claims. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001); *see* 735 ILCS 5/13–202. Because this Court borrows the Illinois statute of limitations, it also borrows Illinois' "tolling rules—including any equitable tolling doctrines." *Johnson*, 272 F.3d at 521 (quoting *Smith v. City of Chicago Heights*, 951 F.2d 834, 839–40 (7th Cir.1992)).

Generally, the statute of limitations clock begins to run on First Amendment retaliation claims immediately after the relation occurs, so long as plaintiff "knows or should know that his or her constitutional rights have been violated." *Towne v. Donnelly*, 44 F.4th 666, 671 (7th Cir. 2022) (quoting *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). Where an action may not be brought because of a statutory prohibition, however, the statute of limitations is tolled until the action may be brought. 735 ILCS 5/13–216; *see Johnson*, 272 F.3d at 521.

Here, under the Prison Litigation Reform Act, Moore could not bring this lawsuit until he exhausted the grievance process, 42 U.S.C. § 1997e(a), and therefore the two-year statute of limitations was tolled until that time. *See Johnson*, 272 F.3d at 521.

Moore's grievance process was not straightforward, as detailed in a previous Order of this Court. (*See* Doc. 43, pp. 5–6). He attempted to exhaust his administrative remedies until May 2020. (*Id.*, p. 6). Because he filed the instant case on November 18, 2021, within two years of May 2020, his action is not barred by the statute of limitations.

**III. Qualified Immunity.**

Qualls also argues that he is entitled to qualified immunity shielding "government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. (Doc. 34, p. 14 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011))). "Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020) (citing *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001)). "To overcome qualified immunity, the facts viewed in the light most favorable to [the plaintiff] must 'show that the defendant[s] violated a constitutional right' and that 'the right was clearly established at [that] time.'" *Id.* (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017)). Notably, "[i]t is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Henry*, 969 F.3d at 785 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "The right must be established not as a general

proposition but in a particularized manner so its contours are clear to a reasonable official." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 665 (2012)).

Here, it was clearly established that an inmate has a right to petition the courts, and that a corrections officer cannot retaliate against an inmate for exercising that right. *See Higgason*, 83 F.3d at 810. Based on the same evidence that precludes summary judgment on Moore's retaliation claim, Qualls is not entitled to qualified immunity.

## IV. Punitive Damages.

Qualls argues that Moore cannot show he is entitled to punitive damages based on Qualls' version of events. (Doc. 67, pp. 12–13). But on a motion for summary judgment, this Court looks at the facts in the light most favorable to the non-moving party, Moore. *See Bennington,* 275 F.3d at 658. "A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (citation modified). Here, a jury could find that Qualls' decision to send Moore to an unsanitary cell in segregation for thirteen days because Moore sued Lt. Morris meets this standard.

## V. Eleventh Amendment Immunity.

The Parties agree that Moore may not seek damages against Qualls in his official capacity. (Doc. 67, pp. 13–14; Doc. 73, p. 13). Because Moore seeks only

damages, (*see* Doc. 15, p. 26), this action shall proceed against Qualls in his personal capacity.

## VI. Prison Litigation Reform Act Limitation on Damages.

Qualls argues that Moore cannot recover compensatory damages because he has not shown that he suffered a physical injury or the commission of a sexual act. (Doc. 67, pp. 14–15). *See Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023) (quoting 42 U.S.C. § 1997e(e)) (The Prison Litigation Reform Act does not allow compensatory damages for mental or emotional injuries unless inmate makes "a 'prior showing' of physical injury or the commission of a sexual act before recovering for these injuries."). Moore has, however alleged that he suffered a physical injury from being placed in segregation; Moore alleged a nurse told him that his stress from being placed in segregation right before Christmas may have a cause of his shingles outbreak. (Doc. 67-7, p. 48–49). Therefore, whether Moore is entitled to compensatory damages is a question of fact for a jury.

## CONCLUSION

For the reasons set forth above, Qualls' Motion for Summary Judgment (Doc. 67) is **GRANTED in part and DENIED in part**. Moore may not seek damages against Qualls in his official capacity, but Qualls' Motion for Summary Judgment (Doc. 67) is otherwise **DENIED**.

**IT IS SO ORDERED.**

**DATED: August 19, 2026**

**STEPHEN P. McGLYNN**
**U.S. District Judge**